## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

Vicki Elder, individually and on behalf of all
others similarly situated,

      Plaintiff,

      v.

Bimbo Bakeries USA, Inc.,

      Defendants.

Case No. 3:21-cv-00637-DWD

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Defendant, Bimbo Bakeries USA, Inc. ("Defendant" or "BBUSA"), by
and through its undersigned counsel, and files this Motion for Summary Judgment against
Plaintiff Vicki Elder ("Plaintiff" or "Elder") pursuant to Rule 56 of the Federal Rules of Civil
Procedure and its incorporated Memorandum of Law, stating the following in support.

FH11110470.9

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.      Legal Standard ................................................................................................... 3

      A.    Standard for Summary Judgment ......................................................... 3

      B.    Standard for Illinois Consumer Fraud Act, Negligent Misrepresentation, Fraud and Unjust Enrichment .............................................................................. 4

II.     There Is No Evidence that Could Lead a Reasonable Jury to Find that the Statement "All Butter Loaf Cake" Is Misleading ...................................................................... 6

      A.    All of the Product's Shortening Comes from Butter ............................... 6

      B.    The Product Does Not Claim to Taste Only of Butter or to Be Flavored Only with Butter .................................................................................................. 7

            1.     No Evidence in the Factual Record Supports Plaintiff's Claim ........... 7

            2.     Plaintiff's Survey Expert Provides No Evidence that the Product Claims to Taste Only of Butter or to Be Flavored Only with Butter .... 8

      C.    There Is No Evidence that Consumers Care Whether Butter Is the Only Source of Flavor in the Product ........................................................................... 15

      D.    The Product Does Not Contain Artificial Butter Flavoring ................... 16

CONCLUSION ............................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abshire v. Stoller*,
   235 Ill. App. 3d 849 (Ill. App. 1992) .......................................................................5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill. 2d 100 (Ill. 2005) ..........................................................................................5

*Bartosiake v. Bimbo Bakeries USA, Inc.*,
   No. 21-cv-04495, 2022 U.S. Dist. LEXIS 177326 (N.D. Ill. Sep. 29, 2022) .........15

*Beardsall v. CVS Pharm., Inc.*,
   953 F.3d 969 (7th Cir. 2020) .....................................................................................4

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007) ...................................................................................13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................................3

*Cordes & Co., Ltd. Liab. Co. v. Mitchell Co., Ltd. Liab. Co.*,
   605 F. Supp. 2d 1015 (N.D. Ill. 2009) .......................................................................5

*de la Rama v. Ill. Dep't of Human Servs.*,
   541 F.3d 681 (7th Cir. 2008) .....................................................................................3

*Devey v. Big Lots, Inc.*,
   No. 21-cv-6688L, 2022 U.S. Dist. LEXIS 186865 (W.D.N.Y. Oct. 12, 2022).......12

*Doctor's Data, Inc. v. Barrett*,
   No. 10 C 03795, 2011 U.S. Dist. LEXIS 134921 (N.D. Ill. Nov. 22, 2011) ...........15

*Floyd v. Pepperidge Farm, Inc.*,
   581 F. Supp. 3d 1101 (S.D. Ill. 2022)........................................................................5

*Hummel v. St. Joseph Cty. Bd. of Comm'rs*,
   817 F.3d 1010 (7th Cir. 2016) ...................................................................................4

ii

*In re Info. Res. Sec. Litig.*,
  Case No. 89 C 3772, 1994 WL 124890 (N.D. Ill. Apr. 7, 1994)..............................5

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000)..............................................................................................3

*Roger Whitmore's Auto. Servs., Inc. v. Lake County, Illinois*,
  424 F.3d 659 (7th Cir. 2005) ...............................................................................4

*SMS Demag Aktiengesellschaft v. Material Scis. Corp.*,
  565 F.3d 365 (7th Cir. 2009) ...............................................................................3

*Spierer v. Rossman*,
  798 F.3d 502 (7th Cir. 2015) ...............................................................................4

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..............................................................................13

*Swift v. First USA Bank*,
  98 C 8238, 1999 U.S. Dist. LEXIS 16192 (N.D. Ill. Sep. 30, 1999).......................15

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ..............................................................................15

*Vizcarra v. Unilever U.S., Inc.*,
  No. 4:20-cv-7777, 2021 U.S. Dist. LEXIS 224285 (N.D. Cal. Oct. 27, 2021) ...............13, 15

*Waldridge v. American Hoechst Corp.*,
  24 F.3d 918 (7th Cir. 1994) ..................................................................................3

*Wallace v. SMC Pneumatics, Inc.*,
  103 F.3d 1394 (7th Cir. 1997) ...............................................................................3

*Weaver v. Champion Petfoods USA Inc.*,
  3 F.4th 927 (7th Cir. 2021) ...................................................................................4

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................13

Fed. R. Civ. P. 56.......................................................................................................3

11 James Wm. Moore et al., Moore's Federal Practice § 56.40 (3d ed. 2022) ..............................4

iii

## INTRODUCTION

Defendant moves for summary judgment to dismiss all of Plaintiff's claims because she failed to discover any evidence that could raise a genuine evidentiary dispute as to whether the name "All Butter Loaf Cake" of Defendant Bimbo Bakeries USA, Inc.'s ("BBUSA's" or "Defendant's") Entenmann's[TM] All Butter Loaf Cake (the "Product") is false or misleading.  The uncontradicted evidence shows that all of the Product's shortening and butter flavor comes from butter; further, Plaintiff has produced no valid evidence that any reasonable consumer would infer from the Product's label that 100% of all its flavors comes from butter.  After discovery, the relevant facts are clear and uncontradicted:

- The name "All Butter Loaf Cake" is intended to, and does, communicate that all of the shortening used in the loaf cake is butter;

- There is no evidence that the name "All Butter Loaf Cake" communicates that all of the flavoring used in the loaf cake is butter, nor even all of the *butter* flavoring;

- All of the shortening used in the loaf cake and all of the butter flavoring used in the loaf cake are butter, while other, non-butter flavorings, i.e. sugar and vanilla flavor, are also present.

Plaintiff's claims cannot survive, and should not be allowed to go to trial.

## BACKGROUND

Plaintiff alleges that the statement "All Butter Loaf Cake" appearing on the Product's label tells consumers that the Product is only shortened with butter, that the Product contains no artificial butter flavor, and that no substitute for butter is used for any purpose for which butter can be used.  Dkt. 1 ¶ 3.  Plaintiff claims that the statement is misleading because the Product

1

uses soybean oil for shortening and contains artificial butter flavoring.  Dkt. 1 ¶¶ 10, 33.  The case survived a Rule 12 motion as the Court held that it "must accept as true Elder's claims that the soybean oil is used as a shortening ingredient or for another purpose for which butter could have been used" and that the Product's label might plausibly convey to consumers that there is no artificial butter flavor in the Product.[1]  Dkt. 19 at 4.

In discovery, BBUSA requested, among other things, all documents supporting Plaintiff's claims, including the laboratory testing and analysis referenced in Plaintiff's Complaint.  BBUSA'S Statement of Undisputed Material Facts filed herewith ("SUF").  Plaintiff responded that she did not have _any_ documents supporting her claims, and produced nothing.  SUF ¶¶ 45-51.  Plaintiff obtained document discovery of BBUSA's formulation and labeling information, but did not take a deposition.  SUF ¶¶ 20-21.

BBUSA, after reviewing the factual record and determining that no dispute exists regarding the roles that soybean oil and the artificial vanilla flavor play in the Product, made a motion to advance the consideration of summary judgment, which the Court granted.  Dkts. 29, 33.  Meanwhile, Plaintiff moved for class certification (Dkt. 31), submitting consumer survey and flavor chemistry expert witness declarations in support.  (Dkts. 31-3, 31-4.)  Although the class certification motion has been stayed pending resolution of this summary judgment motion, BBUSA presumes that Plaintiff intends to rely on her expert witness declarations in opposing

---

[1] The Court stated in denying the motion to dismiss that it could not say that no reasonable consumer would interpret the phrase "All Butter Loaf Cake" as implying the absence of any artificial flavors.  Dkt. 19 at 4.  This goes farther than Plaintiff's allegations, which consistently argued that "all butter" is misleading, in relevant part, because the Product has artificial _butter_ flavors.  _See_ Dkt. 1 ¶¶ 33, 40, 42, 71, 85, 90, 10.  Plaintiff alleges that "All Butter Loaf Cake" is a "no artificial flavors" claim only to the extent that butter is the only flavor that can be tasted in the product – an assertion which, as set forth below, finds no support in the factual record, and is even contradicted by Plaintiff's own flavor expert.

2

this motion and accordingly, BBUSA addresses part of this brief to demonstrating that these expert declarations do not raise triable issues of fact, and submits a rebuttal survey expert report herewith (Expert Report of Anne Cai, Ex. 1 hereto ("Cai Rep.").)

## ARGUMENT

### I.   Legal Standard

#### A.   Standard for Summary Judgment

Summary judgment should be granted when there are no genuine factual disputes that require a trial and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  In evaluating a motion for summary judgment, courts view the evidence in the light most favorable to the non-moving party.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). However, before a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute.  "Genuine," in this context, means "reasonably contestable." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)).  "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *Id.* (citing *Reeves*, 530 U.S. at 148; *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008)).

The burden of production imposed by Rule 56 requires the moving party to make a *prima facie* showing that it is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  When the nonmovant bears the burden of persuasion at trial, the moving party may discharge its initial burden on the motion by producing evidence that negates the nonmovant's

3

claims or defenses and/or by pointing to an absence of admissible evidence to support an essential element of the nonmoving party's claim. Moore's § 56.40 (citing *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016)); *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

The party opposing summary judgment on the ground that there are disputed facts must present enough evidence for a jury to return a verdict for that party. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252 (1986); *see also Roger Whitmore's Auto. Servs., Inc. v. Lake County, Illinois*, 424 F.3d 659, 669 (7th Cir. 2005) (plaintiff's evidence opposing motion insufficient because it amounted to no more than "bare speculation or a scintilla of evidence, neither of which will suffice").

      B.    Standard for Illinois Consumer Fraud Act, Negligent Misrepresentation, Fraud and Unjust Enrichment

As the Court acknowledged in denying BBUSA's motion to dismiss (Dkt. 19 at 7-10), all of Plaintiff's surviving theories have one element in common: Plaintiff bears the burden of proving, either by a preponderance or by clear and convincing evidence depending on the claim, that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, are deceived by the Product's packaging into believing something that is not true – in this case, allegedly, that the Product uses only butter for its shortening and/or uses only butter for its butter flavor. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). This is the primary element on which all of Plaintiff's theories fail. Plaintiff also has failed to elicit a shred of evidence that BBUSA intended to mislead consumers, which is

4

required under most of her theories, or that any alleged deception injured consumers by being material to their purchasing decisions.

Under the ICFA, a plaintiff must prove by a preponderance of the evidence (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 190-192 (Ill. 2005). For common law fraud, Plaintiff must establish by clear and convincing evidence: (1) a false statement of material fact or a material omission, (2) by a party who knows or believes it to be false, (3) with the intent to induce the other party to act, (4) action by the plaintiff in justifiable reliance on the truth of the statement or omission, and (5) damage to the plaintiff resulting from such reliance. *In re Info. Res. Sec. Litig.*, Case No. 89 C 3772, 1994 WL 124890, at *4 (N.D. Ill. Apr. 7, 1994) (citing *Abshire v. Stoller,* 235 Ill. App. 3d 849 (Ill. App. 1992)). For a claim of negligent misrepresentation, Plaintiff must prove by a preponderance of the evidence that Defendant: (1) made false statement of material fact; (2) was careless or negligent in ascertaining the truth; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1111 (S.D. Ill. 2022). Plaintiff's theory of unjust enrichment, premised on the same conduct, requires a similar showing. *Cordes & Co., Ltd. Liab. Co. v. Mitchell Co., Ltd. Liab. Co.*, 605 F. Supp. 2d 1015, 1023-24 (N.D. Ill. 2009).

5

**II.      There Is No Evidence that Could Lead a Reasonable Jury to Find that the Statement "All Butter Loaf Cake" Is Misleading**

Plaintiff has two theories that the challenged element of BBUSA's Product label – the name "All Butter Loaf Cake" or some part of it – can mislead reasonable consumers about some aspect of the Product, one concerning shortening and one concerning flavoring.  Plaintiff's shortening claim fails because, although BBUSA agrees that "All Butter Loaf Cake" communicates that the cake is shortened entirely with butter, the statement is accurate and truthful.  Plaintiff's flavoring claim fails for four independently sufficient reasons:  (1) Plaintiff has no evidence that the Product's packaging communicates that butter is the flavor, let alone the *only* flavor, present in the cake, or that all of the flavoring in the cake comes from butter; (2) Plaintiff has no evidence that BBUSA intended such a message; (3) Plaintiff has no evidence that the source of flavoring in the Product is material to consumers; and (4) to the extent that the Product package communicates that all of the butter flavor in the cake comes from butter, the record establishes that this is accurate and truthful.

A.      <u>All of the Product's Shortening Comes from Butter</u>

The phrase "All Butter Loaf Cake" plausibly communicates that butter is the sole shortening agent in the Product.  That is what BBUSA intended to communicate through the product name.  SUF Ex. 1, Declaration of Kathleen Robbins ("Robbins Decl.") ¶ 13.  BBUSA produced the recipe for the Product, confirming this.  SUF Ex. 7.  Butter makes up ███ of the Product.  SUF ¶ 24.

Plaintiff has produced no further documents or evidence to support her original allegation, based just on the presence of "soybean oil" in the ingredient statement, that vegetable oil is used for part of the shortening in the Product.  Dkt. 1 ¶ 10; SUF ¶¶ 45-51.  BBUSA's recipe

6

and formulation information conclusively shows that vegetable oil is neither used as a shortening nor for any other purpose for which butter could be used.  SUF ¶¶ 25-29.  Soybean oil is not mixed into the batter as an ingredient, but is applied in a thin line to the top outer surface of the cake to facilitate a clean, attractive split in the crust during baking.  SUF ¶ 26.  The oil cannot serve any shortening function by being applied to the cake's outer surface.  SUF ¶ 27.  Butter cannot be used for this function because it would not facilitate the clean break in the crust and is not sufficiently liquid at room (bakery) temperature to be dribbled along the cake.  SUF ¶ 28. The amount of oil in the product makes up ███████ of the Product, or ██████████ the amount of butter, which would be insufficient to serve any shortening function even if it were mixed into the batter (which it is not).  SUF ¶¶ 25, 27.  Plaintiff's shortening claims are conclusively disproven by the undisputed factual record and should be dismissed.

      B.      **The Product Does Not Claim to Taste Only of Butter or to Be Flavored Only with Butter**

      1.      *No Evidence in the Factual Record Supports Plaintiff's Claim*

Plaintiff alleges that the name "All Butter Loaf Cake" communicates, in the alternative or in addition to a claim about the shortening, that butter is the flavor of the cake – and not just the main flavor, but the only flavor consumers will taste.  The Court found this claim to meet the minimum standard of plausibility to survive a motion to dismiss.  At this stage, Plaintiff must go beyond plausibility and find evidence to support her contention about consumers' expectations about the Product's flavor profile and sources.  She has completely failed to do so.

Plaintiff received documents from BBUSA regarding the formulation of the Product name and label.  SUF ¶ 20; SUF Exs. 2, 7, 8.  This turned up not one document indicating that

BBUSA intended "butter" to be a flavor designator of the Product, let alone a signal that its *only* flavor is butter.

Plaintiff did not take any depositions in this case.  SUF ¶ 21.  In a declaration submitted as Ex. 1 to Defendant's SUF, Kathleen Robbins, V.P. of Research & Development at BBUSA, affirms the purpose of the "All Butter" designator on the All Butter Loaf Cake.  Loaf cakes are a cake product category defined by being baked in a bread-loaf shaped cooking pan. SUF ¶ 3.  They may have all-butter shortening, partial butter, or no butter.  SUF ¶¶ 8.  The "All Butter" messaging communicates that only butter is used to shorten this Product, differentiating it from some competing loaf cakes.  SUF ¶ 9.  While butter confers some flavor in the Product, just as the sugar, flour, eggs, and other ingredients do, it is not a "butter cake" in the sense that a chocolate cake, a cinnamon cake, or other such products are named for their primary recognizable flavors. *See* SUF ¶ 31.  The flavors of All Butter Loaf cake are those of the standard cake ingredients, including sugar, flour, eggs, and butter, as well as vanilla, in the form of vanillin, which consumers enjoy and expect to find in almost any white- or yellow-colored cake.

Plaintiff found no factual evidence contradicting these statements.  Her contention that the Product package communicates an exclusively butter flavor, with butter as the exclusive source, rests on a survey expert's study of consumer perceptions of the packaging.

> 2.  *Plaintiff's Survey Expert Provides No Evidence that the Product Claims to Taste Only of Butter or to Be Flavored Only with Butter*

Plaintiff retained Dr. Andrea Lynn Matthews to conduct a consumer survey to investigate, in relevant part, whether the packaging of the product communicates that the Product's sole source of flavor is butter.  However, Dr. Matthews did not actually test the questions that bear on Plaintiff's theory of the case.  It is not just that there are methodological

8

flaws in Dr. Matthews' research; there are, and in profusion, but the more serious issues are that as a matter of design, Dr. Matthews' study was not set up to test whether consumers perceive flavor messaging from the "All Butter Loaf Cake" claim and did not isolate this challenged label element to assess whether it is misleading to consumers as to the source of any flavor.  Further, Dr. Matthews misrepresented the Product labeling consumers in her survey questions and therefore tested a different, non-existent product rather than the Product at issue.

> a.   Dr. Matthews Assumed, Rather than Tested, the Key Questions

Dr. Matthews' study was not designed to test whether the Product packaging communicates that the Product will taste of butter, will taste only of butter, or will contain any butter flavoring, from whatever source.  These were *assumptions* given to Dr. Matthews by Plaintiff's counsel and then *told* to survey respondents as a preface to asking other questions. The key survey question asked by Dr. Matthews – without first asking respondents if the Product label said anything about flavor at all – was:

> Based on the product label that you just saw, please indicate which of the following statements comes closest to your understanding of what the product label is communicating about the cake's <u>flavor</u>.  Specifically, what does the use of the phrase "All Butter Cake" mean with regard to where the flavor of the cake comes from?
>
> The product label indicates that the cake's flavor comes from:
>
> ☐ Butter ONLY, with no butter alternatives or substitutes
> ☐ BOTH butter AND butter alternatives or substitutes
> ☐ Butter alternatives or substitutes ONLY, with no butter
> ☐ Other ingredient(s)
> ☐ None of these

Dkt. 31-3, Declaration of Lynn Matthews ("Matthews Rep.") at 32.  This question instructs respondents that they should have an "understanding" that the label communicates something about the cake's flavor, that the "use of the phrase 'All Butter cake'" (which, as discussed below,

is not the phrase actually used) should tell them where the flavor of the cake comes from, and that the product label indicates where the cake's flavor comes from – all without ever *asking* them if the label communicates anything of the sort.  These questions are exactly the disputed issues in this litigation which Plaintiff must prove as an element of her case, but Dr. Matthews simply instructs respondents that they can find where the cake's flavor comes from on the Product's label.  Cai Rep.  ¶¶ 19-32.  The only thing left for respondents is to guess which source the flavor comes from.  Dr. Matthews asked no questions whose answers could have informed a fact-finder about whether the Product label, in fact, communicates that it has a butter flavor, a butter flavor *only*, or an exclusive flavor source.  The survey is not just flawed, but is not relevant to the material issues of this case, since it just assumes them.

Dr. Matthews' answer alternatives also do not allow for the possibility that consumers might think that the Product might have other flavors in addition to butter.  In her three meaningful answer choices, she sets up a world in which only two types of flavorings exist:  (1) butter and (2) butter alternatives or substitutes.  A respondent who agrees with BBUSA, that the Product label either communicates nothing about the source of its flavor(s) or that, while its butter flavor may all come from butter, it is likely to have other non-butter flavorings (e.g. sugar, vanilla) as well, has no option to express that understanding.  Cai Rep. ¶¶ 25-32.  Again, this is not merely a methodological flaw. The survey simply is not designed to test whether consumers agree with each litigant's competing interpretation of the Product packaging.  The interpretation favored by BBUSA is precluded as a matter of study design.

As Ms. Cai observes in her rebuttal, survey questions that ask consumers about the core issues in this case, rather than assuming Plaintiff's position, could have been incorporated.

10

These include preliminary "filter" questions that ask respondents if they *have* an understanding of what a label communicates before asking them what that understanding is, and providing a "don't know/not sure" answer option for those who do not find their understanding reflected in the answer options.  Dr. Matthews used none of these techniques.  At her deposition, Dr. Matthews admitted that the basic issues of whether the Product labeling communicates anything about the nature and source of its flavorings are just assumed by her survey and were not part of her assignment to test.  Ex. 2 submitted herewith (Excerpts of Deposition Transcript of Dr. Matthews, November 14, 2022) ("Matthews Dep.") at 30:4- 31:1.

     b. Dr. Matthews Misrepresented the Product Labeling to Respondents

    As noted above, Dr. Matthews focused respondents' attention on the expression "All Butter Cake" which actually occurs nowhere on the Product.  Dr. Matthews not only misquoted the label language, but indicated that she was not paraphrasing by calling "All Butter Cake" a "phrase," putting it in quotation marks, and referring to its "use" on the package.  But this is false, and as a result, Dr. Matthews' study tests the meaning of a phrase that is neither used on the Product nor challenged in this litigation, rendering her survey irrelevant.

    Dr. Matthews' distortion of the Product label language not only distorts the wording of the challenged label claim, but also misrepresents the product category in which the Product is marketed.  The Product is a loaf cake, a category of cakes defined by being baked in a loaf-shaped pan, and not by any ingredients.  Butter cakes are a different category; they can have any shape, such as a standard cylindrical cake or a bundt cake form, and are defined by using lots of butter.  Robbins Decl. ¶ 9. By falsely describing the product as a butter cake to respondents, Dr.

Matthews led them to expect that butter would be a major or even exclusive ingredient in the

cake.  She even admitted that she did so intentionally:

> "Q. Okay. But […] why would you then change it? why not fully quote the phrase ["All Butter Loaf Cake"] on the package?
>
> A. I considered it, and since the relevant and -- the relevant phrase was the all butter, it is in a larger text than the rest of the phrase, that the all butter was the relevant component and that previously, we had talked throughout the scenario in terms of cakes, cakes, cakes, that it would have drawn attention away from the larger print 'all butter' component, and so I chose to say 'all butter cake.'"

Matthews Dep. at 95:1-12.  Drawing respondents' attention away from the Product's *actual* label

content in order to focus their attention on *non-existent* label content that the researcher considers

"relevant" is an egregious, intentional introduction of bias into the research.  Such

misrepresentations of wording in a case such as this are not trivial.  As a court recently held in

another recent food labeling case filed by Plaintiff's counsel, "in matters such as this, where a

defendant's exact words form the entire basis of the action against it, a legal representative's

ethical and professional responsibilities demand that particular care be taken to represent those

words accurately and precisely."  *Devey v. Big Lots, Inc.*, No. 21-cv-6688L, 2022 U.S. Dist.

LEXIS 186865, n.1* (W.D.N.Y. Oct. 12, 2022) (granting motion to dismiss and cautioning

counsel that "engagement in false misquotations of the subject labeling has the potential to result

in the imposition of sanctions, and should be scrupulously avoided in the future").  This applies

with even more force when developing expert evidence through supposedly scientific research.

This, alone, warrants disregarding Dr. Matthews' survey and disqualifying her expert opinion.

12

        c.       Dr. Matthews Used an Improper Control that Cannot Isolate the Impact of the Challenged "All Butter Loaf Cake" Label Element

In an ICFA case, to which Rule 9(b) pleading requirements apply, *see Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007), a plaintiff cannot vaguely challenge the entire package or some unknown aspect of it, but must allege and prove with particularity which element(s) are misleading.  *See Vizcarra v. Unilever U.S., Inc.*, No. 4:20-cv-7777, 2021 U.S. Dist. LEXIS  224285 at *29 n.4 (N.D. Cal. Oct. 27, 2021) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (holding Rule 9(b) requires alleging "specific content of the false representations" in a false advertising case).  Plaintiff did identify this content – the "All Butter" part of the "All Butter Loaf Cake" Product name.  To provide evidence that this content, and not something else, misleads consumers, a consumer survey must use a proper control.  Proper controls are essential in such surveys because they can isolate the factor that the researcher wishes to test – the challenged elements of the labeling or advertising – from the other factors that can drive responses to survey questions, including non-challenged packaging elements, respondents' existing beliefs about the product or product category, and survey artifacts from biased questions such as those discussed above.  Cai Rep. ¶ 20.  In a proper control, a randomized group of respondents views a version of the product label or advertisement with the element that is challenged – here, the partial phrase "All Butter" – removed.  Any respondents who still report receiving the allegedly misleading message with this element removed, must be responding for some reason other than the alleged false advertising.  This "noise" level can be deducted to compute a level of deception attributable to the specific challenged label content.

13

Dr. Matthews did not use a proper control capable of isolating the impact of the "All Butter" label element Plaintiff challenges.  She created a control group and showed it an altered Product package, but that package did not remove the challenged label element.  Instead, it *added* a disclosure, "Naturally and artificially flavored," to the package.  Asked why she adopted this unconventional control stimulus, Dr. Matthews testified that it was provided by her client, Plaintiff's counsel, as a version of the package that incorporated the "appropriate remedy" if the alleged misleading impression *were assumed to exist*.  Matthews Dep. at 118:4-20.  Whatever the legal merit of this position, it was wholly inappropriate as a matter of science.  A proper control isolates the impact of the element of interest by switching it "on" and "off" between the experimental and the control groups.  In Dr. Matthews' study, the phrase "All Butter," along with every other element of the Product label, was switched "on" in both conditions, making it impossible to determine whether the presence or absence of the challenged claim has any effect.

To the extent that respondents appeared to perceive the Product as being flavored entirely by butter, Dr. Matthews' survey cannot say whether such apparent perceptions are caused by the challenged "All Butter" label element, by their existing beliefs about loaf cakes, by some non-challenged element of the Product packaging, or by Dr. Matthews' extraordinarily leading and biased survey questions.  Cai Report ¶ 48.  And, to the extent that Plaintiff's "Naturally and artificially flavored" disclosure appeared to reduce such perceptions, there is no telling which of these sources of alleged consumer confusion it counteracted.  *Id*. at ¶35.

At her deposition, Dr. Matthews correctly admitted that her consumer perception study tested *the impact of adding a disclosure* to the Product label; it did not test whether the challenged part of the Product label was the source of any allegedly misleading beliefs in the first

14

place.  Matthews Dep. at 47:24-48:7.  This means that Dr. Matthews' study provides no evidence on the issue as to which Plaintiff has the burden of proof – whether the name "All Butter Loaf Cake" misleads consumers.  See *Vizcarra,* at *31-32 (N.D. Cal. 2021) (rejecting consumer survey as irrelevant because it did not use a control that could isolate the impact of the specific, challenged part of the label).

Because there is also no such evidence in the factual record, Plaintiff cannot create a triable issue of fact on this essential element of her claim.

C.      There Is No Evidence that Consumers Care Whether Butter Is the Only Source of Flavor in the Product

Another essential element on which Plaintiff bears the burden of proof is that the challenged claims must be material, *i.e.*, likely to affect consumers' purchasing decisions.  *Swift v. First USA Bank*, 98 C 8238, 1999 U.S. Dist. LEXIS 16192, at *15 (N.D. Ill. Sep. 30, 1999) ("To state a claim under the ICFA, the plaintiff must establish that the defendant made a misrepresentation of material fact"); *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 U.S. Dist. LEXIS 134921, at *34 (N.D. Ill. Nov. 22, 2011) (stating that fraudulent misrepresentation requires showing of false statement of material fact*); Bartosiake v. Bimbo Bakeries USA, Inc.*, No. 21-cv-04495, 2022 U.S. Dist. LEXIS 177326, at *11 (N.D. Ill. Sep. 29, 2022)("Negligent misrepresentation requires a false statement of material fact.") (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007)).  Again, Plaintiff developed no fact evidence to support her arguments, and relies entirely on expert opinion.

In a second arm of her survey, purporting to show that the source of butter flavoring is likely to affect consumer purchasing decisions, Dr. Matthews even more extravagantly

15

misrepresented the Product to respondents.  In just the one key question in this portion of this

survey, Dr. Matthews misquoted the Product's name as "All Butter Cake" or misidentified its

product category as "butter cake" *25 times*, without ever accurately stating the Product name or

showing respondents the real Product.  Cai Rep. ¶¶ 23-24.  There is no telling what kind of

"butter cake" respondents imagined when answering this question.  At her deposition, Dr.

Matthews admitted that this arm of her study was not about the Product at all, but whether

consumers prefer butter to be the only source of butter flavor in their "butter cakes" in the

abstract.  Although there are several other fatal flaws in this part of Dr. Matthews' study, as

discussed by Ms. Cai in her expert report, this one flaw makes Dr. Matthews' materiality survey

irrelevant to this case.  Dr. Matthews furnished no evidence that consumers prefer butter to be

the only source of flavoring in *this Product*, nor is there any other evidence in the record.

Plaintiff thus cannot show a triable issue of fact on whether the challenged claims are material.

### D.      The Product Does Not Contain Artificial Butter Flavoring

Plaintiff alleged in the Complaint that the Product contained artificial butter flavoring.

Her purported analytical testing allegedly detected artificial butter flavors such as diacetyl (2,3-

butanedione), butanoic acid and acetoin.  Dkt. 1 ¶ 35.  Plaintiff failed to produce any such

analytical testing, so these remain conclusory allegations, supported by no evidence, and perhaps

have been abandoned.  BBUSA produced recipe information showing that the only artificial

flavoring in the Product is vanillin, the chemical that is the most characteristic flavor of vanilla.

16

SUF ¶ 39.  The other major flavor ingredient in the recipe is sugar, which actually is the first-listed ingredient in the Product's ingredient declaration.[2]  Dkt. 1 ¶ 10; Dkt. 20 ¶10.

The record establishes that consumers expect a vanilla taste in a white- or yellow-colored loaf cake, whether or not it is characterized as a "butter" loaf cake.  The most persuasive evidence comes from Plaintiff's own flavor chemistry expert, who specializes in vanilla.  Dr. Havkin-Frenkel testified at her deposition that vanilla flavor is so loved by consumers that it is used in a wide panoply of food products, including even foods such as chocolate.  Ex. 3 submitted herewith (Deposition Transcript of Dr. Frenkel, November 23, 2022) ("Havkin-Frenkel Rep.") at 52:25-53:7.  This is supported by a survey of recipes for home-baked cakes similar to the Product here:  loaf cakes, pound cakes, and white cakes.  *See* SUF Ex. 4 (Decl. of Katherine Luo).  The vast majority of such products contain vanilla flavoring, even though they are not "butter" cakes and do not promote butter as their primary flavor.  *Id.*  Vanilla is not imitating butter in these products.  Even "butter cakes" (which this Product is not) almost always employ vanilla flavoring even though they have ample butter to confer butter taste.  *Id.*  BBUSA confirms that vanillin is added to the All Butter Loaf Cake to confer a vanilla flavor.  Robbins Decl. ¶ 26.  Against this evidence, Plaintiff furnishes not an iota of evidence that the vanillin in the Product is either intended to, or does, taste to consumers like butter, as opposed to vanilla.

The facts, again, are undisputed.  The Product is an All Butter Loaf Cake that tastes like butter, but also like sugar and vanilla, as well typical cake ingredients.  The butter taste is

---

[2] Many ingredients in the Product may make some contribution to flavor, including wheat, eggs, milk, etc.  BBUSA here uses "flavoring" to mean ingredients whose primary contribution is to the product's taste profile.

17

provided solely by butter, which is abundant, comprising ███ of the total weight of the cake and enough to completely fulfill the shortening function.  The sugar taste is provided by sugar, which is a natural flavor.  The vanilla taste is provided by vanillin, an artificial flavor.  The fact that all of these flavors taste good together does not make any of them an imitation of another.

Plaintiff's expert, Dr. Havkin-Frankel, a flavor chemist, opined generally that vanilla is used to enhance butter flavoring in some products.  Dkt. 31-4 (Havkin-Frankel Rep.) ¶ 27.  Even at the most general level, she did not name any such products or cite any authority to support this position except for one product, a butter flavoring component unrelated to the Product at issue. *Id*. ¶ 34.  At her deposition, she admitted that a product with both butter and vanillin in it will not simply taste like it has more butter.  Ex. 3 submitted herewith (Excerpts of Deposition Transcript of Dr. Havkin-Frenkel, November 23, 2022) ("Havkin-Frenkel Dep.") at 54:7-10; 59:20-60:7. She conducted no expert analysis of the Product to determine whether vanillin is used as a substitute for butter in this instance.  Asked whether, given that there is enough butter in the Product to be the sole shortening agent, there is also enough to confer a butter flavor without any assistance from vanillin, Dr. Havkin-Frenkel said that it would depend on how much butter is in the Product.  Havkin-Frenkel Dep. at 57:13-58:5.  That information was produced by BBUSA and available to Dr. Havkin-Frenkel, but she did not consider it.  Nor did she review any of the other documents produced by BBUSA.  Havkin-Frenkel Rep. ¶¶ 16-17 (she reviewed only the front panel and ingredient statement).

Dr. Havkin-Frenkel admitted that vanillin might well be added to the Product to confer a vanilla taste, not to strengthen the butter taste.  She acknowledged that (a) vanilla flavor is distinct from butter flavor, Havkin-Frenkel Dep. at 53:8-10; (b) vanilla flavoring is not always

18

added to baked goods like the Product solely to recreate butter, *id*. at 56:5- 57:3; and (c) she had

no information as to why artificial vanilla flavoring was added to this Product, *id*. 58:6-18.

The sum and substance of Dr. Havkin-Frenkel's expert opinion is that sometimes vanilla

or vanillin is used to support butter flavor, but sometimes it is not, and she has no specific

opinion as to whether the vanillin in the Product was used to enhance its butter flavor as opposed

to adding a vanilla taste.  This provides no evidence that vanillin is used as an artificial butter

flavor in the Product.  It is not even an admissible expert opinion, inasmuch as it reflects no

systematic analysis of the Product and its ingredients, and Dr. Havkin-Frenkel made no use of

BBUSA's Product formulation and other documents available to her.  Much of her expert

declaration simply recites and interprets Food & Drug Administration regulations, even though

Dr. Havkin-Frenkel is not a lawyer, has never worked for FDA, and considers herself an expert

in FDA regulations only insofar as she has attempted to comply with them during her career as a

flavor marketer.  Havkin-Frenkel Rep. ¶¶ 18, 19, 20, 22, 23, 24, 35; Havkin-Frenkel Dep. at

31:6-33:12.  Even her final conclusion is *not* that vanillin serves as an artificial butter flavor in

the Product, but the lawyerly statement that "the Product's artificial flavors should be disclosed

on the front label, in the manner prescribed by federal regulations."  Havkin-Frenkel Rep.  ¶ 35.

The only part of Dr. Havkin-Frenkel's report that deals in any detail with food chemistry,

her area of expertise, is simply wrong.  The report contains a four-paragraph argument that

vanillin naturally occurs and is a "significant flavor compound" in butter, citing a published

chromatography study.  Havkin-Frenel Rep. ¶¶ 28-31.  As Dr. Havkin-Frenkel readily and firmly

agreed during her deposition, this is not true; vanillin is a chemical made only by plants, never

by cows, and could occur in butter only as a "contaminant."  Havkin-Frenkel Dep. at 66:24-

19

68:21.  Asked why she said the opposite in her expert report, Dr. Havkin-Frenkel tried to claim

that she meant butter flavoring, not butter.  But her report, and the chromatography paper she

cited, are clear in claiming that vanillin is found in pure butter.  Thus she recanted the only

portion of her report that employed any food chemistry expertise.[3]

## CONCLUSION

In light of the factual record, it is undisputed that the Product is shortened entirely with

butter, warranting summary judgment against Plaintiff on her shortening theory.  With respect to

her flavoring theory, Plaintiff has failed to develop even an iota of admissible evidence for the

following essential elements of her case:

- The Product's name "All Butter Loaf Cake" is intended to, and does, communicate that it has only butter flavor, and that all of that flavor comes from butter;

- Consumers find it material whether all of the Product's butter flavor comes from butter;

- The Product's butter flavor does not all come from butter.

None of these contentions, the failure of any one of which dooms Plaintiff's case, finds any

support in the factual record.  Plaintiff relies exclusively on expert witnesses for all of her

evidence, but her experts did not directly address any of these specific points, and their opinions

on the issues they did address are so flawed and unreliable that they must be discarded.

Accordingly, BBUSA respectfully moves this court to enter summary judgment against

Plaintiff Vicki Elder.

------

[3] It does not appear that Dr. Havkin-Frenkel wrote, or even read, this part of her report.  An investigation of the paper cited for this point traced it to Wikipedia's page about vanillin, which also wrongly claims that "vanillin contributes to the flavor and aroma profile[] of … butter," and duplicates the citation's error in misidentifyng the lead author of the article.  It seems likely that someone found this false factual statement on Wikipedia, wrote it up for Dr. Havkin-Frenkel's report, and got her to sign on to an argument with which she categorically disagreed, and would never have written herself.

20

Dated:  December 9, 2022

Respectfully submitted,

BIMBO BAKERIES USA, INC.

By its attorneys,

  /s/ *August Horvath*
August T. Horvath (No. 2833234)
Foley Hoag LLP
1301 Avenue of the Americas, 25th floor
New York, New York 10019
Telephone: (212) 812-0344
Facsimile: (212) 812-0399
ahorvath@foleyhoag.com

21

FH11110470.9

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to any non-registered parties.

*/s/  August Horvath*

22

FH11110470.9