IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VICKI ELDER, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 3:21-cv-637-DWD<br>)<br>) |
| BIMBO BAKERIES USA, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Vicki Elder brings this putative class action against Defendant Bimbo Bakeries USA, Inc., alleging that Defendant deceptively labelled one of its food products. Elder brings a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and claims for breach of warranty, negligent misrepresentation, fraud, and unjust enrichment. Defendant filed a motion to dismiss the complaint for failure to state a claim. (Doc. 7). The Court dismissed the Plaintiff's claims for breach of warranty but allowed the balance of the claims to proceed. (Doc. 19). Following discovery, the Defendant filed its motion for summary judgment. (Doc. 34). The motion has been fully briefed and is ripe for decision. For the following reasons, the motion is due to be **GRANTED**.

### I.  FACTUAL BACKGROUND

Defendant manufactures, labels, markets, and sells a cake labelled "All Butter Loaf Cake" under its Entenmann's brand. (Doc. 1 at 1). According to the cake's ingredients

label, it contains butter, soybean oil, and artificial flavors, among other ingredients. (Doc. 1 at 3). Elder alleges that the label "All Butter Loaf Cake" is misleading because the soybean oil acts as a shortening ingredient and, thus, a butter substitute. The artificial flavors enhance the cake's buttery taste and cover the non-buttery flavor of the soybean oil. Together, the soybean oil and artificial flavors give consumers the impression that the cake contains more butter than it actually does. Elder claims that had she not been misled by the "All Butter Loaf Cake" label, she would have purchased fewer cakes or paid less for them. (Doc. 1 at 9).

"All Butter Loaf Cake." No reasonable consumer would subscribe to the interpretation that the entire cake is made purely of butter, and the Plaintiff agrees that the product here probably contains other ingredients besides butter. (Doc.36-1, ¶ 43; Doc. 36-3 at 31:17-32:10)  Rather, Elder alleges that a reasonable consumer would interpret the label to mean that "all the shortening and flavoring comes from real butter" and "no butter alternatives or substitutes will be used in the Product where butter is capable of being used." (Doc. 1 at 2–4). This reasonable consumer would be deceived because, as Elder alleges, soybean oil provides some of the shortening function and artificial flavors provide additional flavoring. (Doc. 1 at 3 & 6).

Defendant argued in support of its motion to dismiss that Elder has failed to plausibly allege (1) that soybean oil provides some of the shortening function and (2) that the label reasonably implies that the cake contains no artificial flavors. Defendant claimed that the soybean oil is used only to create a crack along the top of the cake, not as shortening. (Doc. 7 at 7). In ruling on the motion to dismiss, this Court determined that

2

claim to be a factual assertion that contradicts Elder's claims. For purposes of the motion to dismiss, the Court had no alternative but to accept as true Elder's factual assertions that the soybean oil is used as a shortening ingredient or for another purpose for which butter could have been used. (Doc. 1 at 4).

As to artificial flavors, both parties agreed, for purposes of considering the motion to dismiss, that butter has something to do with the flavor of the cake. Thus, the Court could not reach the conclusion that no reasonable consumer would interpret the phrase "All Butter" as further implying the absence of artificial flavors. The Court, at that time, found that Elder has plausibly alleged deception under ICFA. But, now, the Court is called upon not to judge the plausibility of the Plaintiff's allegations but to judge the sustainability of Plaintiff's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of triable fact exists only if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City Of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Defendant, as the movant, bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp.*, 477 U.S. at 323). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving

party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 323. The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

A party will successfully oppose summary judgment only if it presents, "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). In reviewing the record, disputed facts are viewed in a light most favorable to the nonmoving party; however, this treatment does not extend to inferences supported by only speculation or conjecture. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019); *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (indicating, during summary judgment, a court accepts the nonmoving party's version of any disputed fact only if supported by relevant, admissible evidence.).

### III. STANDARDS FOR ICFA, NEGLIGENT MISREPRESENTATION, FRAUD and UNJUST ENRICHMENT.

Plaintiff's surviving claims are based upon ICFA, negligent misrepresentation, fraud, and unjust enrichment. It is useful to review the elements of those theories.

ICFA safeguards "consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (internal citation and quotation marks omitted). To state an ICFA claim, a plaintiff must allege: "(1) a deceptive or unfair act or

4

practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Id*. Further, "a complaint 'must plead sufficient acts or facts relied upon to establish the fraud', and fraud must be a necessary or probable inference from the facts alleged." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992) (internal citation and quotation marks omitted).

Here, the parties primary dispute involves the first element: whether Defendant engaged in deceptive or unfair acts or practices. To sufficiently allege deceptive conduct, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer in light of all the information available to the consumer. *See Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014). Accordingly, the question becomes "whether the allegedly false and misleading statements can be read to create a likelihood of deception or to have the capacity to deceive" a reasonable consumer. *Bober v. Glaxo Wellcome PLC*, 246 F.3d, 934 938 (7th Cir. 2001). To clear this bar, Elder must establish "a probability that a significant portion of the general consuming public…, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal citations and quotation marks omitted); *see also Ebner*, 838 F.3d at 965 (there must be "more than a mere possibility that…[a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner' ").

This standard requires a "practical and fact-intensive approach to consumer behavior." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020). Thus, how

reasonable consumers would interpret an ambiguous food label is typically a question of fact that should not be decided on the pleadings. *See id.* at 483 (finding that the phrase "100% Grated Parmesan Cheese" was deceptive in the sense that reasonable consumers could be misled to believe that the product contained only cheese and not additives).

Further, the elements of negligent misrepresentation are:

> (1) a false statement of a material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance when the party making the statement is under a duty to communicate accurate information.

*Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 562 (Ill. App. Ct. 2003). Illinois law generally does not permit a negligence action for recovery of economic loss alone. *Clay Fin. LLC v. Mandell*, No. 16-cv-11571, 2017 WL 3581142, at *4 (N.D. Ill. Aug. 18, 2017) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982)). However, there are exceptions when (1) the defendant intentionally made false representations or (2) the defendant made negligent misrepresentations while "in the business of supplying information for the guidance of others in their business transactions." *Id.* (quoting *Moorman Mfg. Co.*, 435 N.E.2d at 452).

Only the first exception applies here. The complaint alleges that Defendant acted with "fraudulent intent [as] evinced by its knowledge that the Product was not consistent with its representations." (Doc. 1 at 14).

Next, common-law fraud claims require that a plaintiff plead and ultimately bring forward evidence of: "(1) a false statement of material fact; (2) defendant's knowledge

that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 637 (S.D. Ill. 2022) (quoting *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007)).

Finally, Illinois law recognizes unjust enrichment as an independent cause of action. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). If such a claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim, tied to the related claim, will stand or fall with it. *Id* at 517.

## IV. ANALYSIS

When resisting a motion for summary judgment, more is required of that party than reference to what has been alleged in the complaint. In other words, the nonmoving Plaintiff may not avoid summary judgment by merely resting on the pleadings. *Celotex Corp.*, 477 U.S. at 325-26. Thus, the nonmoving party cannot "sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). This is especially true where the nonmovant bears the burden of proof on that particular issue. *See Celotex*, 477 U.S. at 322 (stating Rule 56(c) mandates summary judgment in favor of the movant where the nonmovant fails to make a sufficient showing to establish the existence of an element essential to that party's case and where that party bears the burden of proof at trial on that element); *accord MacDonald v. Commonwealth Edison Serv. Annuity Fund*, 810 F. Supp. 239, 241 (N.D. Ill. 1993).

It is appropriate to begin the discussion with Plaintiff's assertion that consumers would be disappointed when they learned that the product lacks the amount of butter the packaging suggests and contains "artificial butter flavors." According to the record, Defendant through discovery requested from the Plaintiff all documents supporting her claims of the laboratory testing and analysis referenced in Plaintiff's Complaint. (Doc. 34, P. 6; Doc. 35-9) Plaintiff responded that she did not have any documents supporting those claims and produced nothing in response. (Doc. 34, P.6); Defendant's Statement of Undisputed Facts, ¶¶ 45-51. This raises immediate concerns because the Plaintiff specifically alleged in her complaint that (1) the product contains less butter than consumers were led to believe by the use of the words "All Butter Loaf Cake," and that (2) testing revealed the product contained "artificial butter flavors." (Doc. 1, ¶ 35-39).[1] Such allegations are to be taken as true and, as such, lend plausibility to the claim as a whole and tend toward getting past the scrutiny of a 12(b)(6) motion to dismiss. In fact, those allegations were taken as true and did serve as a partial basis for the Court's denial of Defendant's motion to dismiss.

On a similar note, Defendant also requested from the Plaintiff documents that support the allegations in her complaint that at least 7 out of 10 consumers avoid artificial flavorings because of health concerns. (Doc. 1, ¶ 45; Doc. 35-9). Plaintiff responded: "Plaintiff does not possess documents and communications concerning any consumer surveys conducted, authorized, or relied upon in filing this complaint, including but not

---

[1] It may well be that Counsel has excuse or explanation for the absence of the testing reports but he offers nothing in his Memorandum in Opposition.

limited to the consumer survey referenced in Paragraph 45 of the Complaint…." (Doc. 35-9). It is, therefore, unclear to the Court what basis, if any, Plaintiff had to make these allegations and why, at the time of briefing her response to the Motion to Dismiss, the absence of support for such allegations was not made known to the Court.

As mentioned, Plaintiff asserts in her complaint that the product is butter-flavored due, in part, to artificial flavors. (Doc. 1, ¶¶ 35, 41, 42, 43, 48, 50, 68, 70, 71, 72, 85). The Plaintiff's opposition materials point to no factual evidence that this is so. In fact, according to the Defendant, "[t]here is no artificial butter flavor in the product" and "the only artificial flavor found in the product is vanillin." (Doc 36-1, ¶¶ 35 & 37). Furthermore, Defendant points out that its Statement of Undisputed Facts reveals that Vanillin is used to confer, not a butter flavor, but a vanilla flavor. (Doc. 36-1, ¶¶ 40-41) Here, Vanillin represents only .2655% of the product. *Id*. at ¶ 38. Plaintiff did not contest the Defendant's Statement of Undisputed Material Facts on these points and does not now appear to dispute these statements. Thus, Plaintiff's allegations that this product contains an artificial butter flavor lacks factual support.

Also, Plaintiffs response in opposition to the present motion fails to point to direct factual evidence to support her allegations that there is less-than-expected butter in the product.[2] To address the unrealized consumer expectation allegations, Defendant

---

[2] Plaintiff makes only passing references, in her memorandum in opposition to the motion for summary judgment, to the "Matthews Declaration" (Doc. 43, P. 12) (Doc. 31-3), which was offered as an "Expert Declaration in relation to the Plaintiff's Motion for Class Certification." She quotes Dr. Matthews at ¶ 109, where she states: "we find that a majority of consumers overall would rather purchase butter cakes flavored by and shortened by butter only." Further, ¶ 108 states: "for all consumers, there was a statistically significant (p<.05) decrease in the likelihood of perceiving that Entenmann's All Butter Loaf Cakes were

9

provided documentation by way of a "Formula Expanded Composition Report." That report indicates that the product contains nearly 15% butter. (Doc. 36-4) The Plaintiff does not dispute that contention. (Doc. 36-1, ¶ 24). Significantly, Plaintiff offers no facts to suggest that this information is incorrect, or that the typical consumer was misled by the packaging, such that she believed there was more than approximately 15% butter in the product. And, importantly, Plaintiff points to no facts for the proposition that consumers, having misinterpreted the packaging phrase, expect an "all butter loaf cake" to contain more butter than this product contains. Clearly, under any theory advanced by Plaintiff, her disappointment in a product must be based on more than mere taste preferences. Rather, for Plaintiff's claims to survive, she, as a consumer, must have been misled to her detriment by the quality or content representations on the label. Here, Plaintiff brings no evidence to the record that Defendant misled Plaintiff regarding the amount of butter in the product.

Instead of pointing to factual evidence, the Plaintiff resists the present motion by pivoting and then referring to theoretical consumer's unmet sensory and pleasure expectations at the hands of inaccurate advertising. (Doc. 43, P. 8) In support, Plaintiff contends the "literature in [the area of consumer psychology] makes clear that consumers initially have to rely on extrinsic cues such as visual information on labels and packaging to evaluate any product." (Doc. 43. P. 8) With a great stride, she concludes that "[s]ince

---

flavored or shortened with butter only when the words 'Naturally & Artificially Flavored' were added to the package label." However, according to the Defendant, "[t]here is no artificial butter flavor in the product" and "the only artificial flavor in the product is vanillin." (Doc. 36-1, ¶¶ 35 & 37). The Plaintiff does not dispute these statements. Thus, Plaintiff's allegations (Doc. 1, ¶¶ 35, 41, 42, 43, 48, 50, 68, 70, 71, 72, 85) that this product contains an artificial butter flavor lacks basis.

10

'extrinsic cues are linked to information presented on or with the product,' the front label statement of 'All Butter' tells purchasers the cake will have a butter taste." *Id*. In essence, Plaintiff argues the words "All Butter Loaf Cake" communicates to the consumer that the characterizing flavor is butter. Plaintiff contends that the source of the flavor must be disclosed to the consumer. Plaintiff then concludes that since the "characterizing flavor" is butter, Defendant's failure to "prominently reveal the presence of an artificial flavor" (*i.e.* vanilla) is a misrepresentation.

The Plaintiff reaches this conclusion because Dr. Havkin-Frenkel testified that the vanilla was added to "simulate the butter rather than to add vanilla flavor," as it adds "some creamy to it" and makes it smooth, sweeter, and fatty. (Doc. 43, P. 13) She offered no facts to support this bare assertion and the Defendant says that the vanilla is used in the product to confer a vanilla taste, not to simulate, resemble or reinforce a butter taste. (Doc. 36-1, ¶ 41)  It is noteworthy, however, that Dr. Havkin-Frenkel also testified that the vanilla might have been added, not to enhance or supplement whatever flavor the real butter brings to the product, but to confer a vanilla taste, just as Defendant claims. Defendant argues that this concession represents the death knell to Plaintiff's claim because it essentially indicates that Dr. Havkin-Frenkel's opinion is distilled down to the notion that the product *might* be flavored with vanilla as a substitute for butter, not that it *is*. Defendant goes on to contend that Dr. Havkin-Frenkel's concession on this point is consistent with the undisputed evidence submitted by Defendant regarding the prevalence of vanilla flavoring in all kinds of cakes, including butter cakes. (Doc. 44, P. 5)

Still, Plaintiff points to no direct evidence of record that the characterizing flavor

in the product is, in fact, "butter." The most the Defendant offers is a colloquy that occurred during the deposition of the Plaintiff's proposed expert, Dr. Havkin-Frenkel. Based on her review of the product's label and name, she concluded that the characterizing flavor is butter because "you call it butter, its labeled butter, why would you think something else." She went on to opine that "when you look at the product and it says butter[] or something, you would think it's ---that's the flavor." (Doc. 43, P. 11). She then concluded that "[t]here's no frosting on this cake, there's no nuts inside this cake, there's no pieces of chocolate in this cake…there's only one – it's a butter cake." *Id*. And, when asked if the product could also taste like vanilla, Dr. Havkin-Frenkel responded: "Then why would you call it butter cake if it tastes like vanilla?" *Id*. Respectfully, this testimony is neither "expert testimony" nor helpful to the issues here.

      Rule 56(e) requires that affidavits opposing motions for summary judgment must "set forth facts" and, in the case of experts, who are not fact witnesses, "a process of reasoning beginning from a firm foundation." *Mid-State Fretilizer Co. v Exchange Nat'l Bank of Chicago,* 877 F. 2d 1333, 1339 (7th Cir. 1989) This is so because "[e]xpertise is a rational process and a rational process implies expressed reasons for judgment. An opinion has significance proportioned to the sources that sustain it." *Id.* In the end, the "expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.*

      Here, the Plaintiff lacks a firm factual foundation on which Dr. Havkin-Frenkel can place a technical or learned opinion. Unfortunately, she makes only general assumptions and observations about flavors and consumer expectations without

12

disclosing any underlying data or information. As such, her statements as revealed in the record do not lend value to the process. The Plaintiff fails to direct the court to reliable facts or opinions that would assist a trier of fact, as necessary to support Plaintiff's claims.

It is the obligation of the Plaintiff, as the party opposing summary judgment, to offer some admissible evidence in support of each element of her claim, sufficient for a reasonable juror to render a verdict in her favor. *Durling v. Menard, Inc.*, No. 18-cv-4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)). But, "inferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). As a result, Plaintiff fails to present the necessary factual support for the allegation that the Defendant's statements can be read to create a likelihood of deception or to have the capacity to deceive.

### The Matthews Consumer Confusion Survey

Being mindful of the teachings of *Beardsdall*, 953 F.3d 969, 973 (7th Cir. 2020) (plaintiff's obligation to show "probability that a significant portion of the general consuming public…, acting reasonably in the circumstances, could be misled" by product label) and *Bell* 982 F.3d 468, 478 (7th Cir. 2020) ( standard requires a "practical and fact-intensive approach to consumer behavior.) it is important and, in this instance, illuminating, to address the Plaintiff's contention that a consumer survey it conducted illustrates that the labeling here is misleading. Plaintiff employed Dr. Andrea Lynn Matthews, Ph.D to conduct a Consumer Confusion Survey in the apparent attempt to assess whether and to what extent consumers are misled by Defendant's use of the phrase

13

"All Butter Loaf Cake". More specifically, the survey was conducted to "test whether the sources of the cake's butter flavor . . .impact[] consumer decisions regarding product choice." (Doc. 31-3, ¶¶ 8-10). Dr. Matthews concluded from her survey that "a sizeable proportion of the target market for Entenmann's All Butter Loaf Cakes believes that these cakes are flavored and shortened with butter only," and that "there was a statistically significant (p<.05) decrease in the likelihood of perceiving Entenmann's All Butter Loaf Cakes were flavored or shortened with butter only when the words "Naturally & Artificially Flavored" were added to the package label." (Doc. 31-3, ¶¶ 107-108)

The problem that persists for Plaintiff is that there is no evidence that the product here has its butter flavor or its shortening from anything but butter. More to the point, Dr. Matthew made the assumption that, in fact, the product was not butter flavored and shortened by butter alone. Actually, this assumption was made because Plaintiff's Counsel represented to her that "there were other ingredients besides butter used to flavor and shorten the product". (Doc. 34-2, P. 30) Based upon this assumption she concluded that "56.7% of consumers of packed cakes *incorrectly* believed that Entenmann's All Butter Loaf Cake is flavored with butter only." *Id*. (emphasis added).

On examination, Dr. Matthews was then asked "[s]o, if you were to learn, for instance, that there is, in fact, no artificial butter flavor in this cake, you would delete the work 'incorrectly' from your conclusion here, right?" *Id*. Dr. Matthews responded that she would, indeed, remove the word 'incorrectly' from her conclusion. *Id*.

Obviously, Dr. Matthew's revelation that if the basis for her conclusion was wrong, her conclusion would also be wrong, illustrates well that the survey provides no

14

help to Plaintiff in her effort to show the existence of evidence that demonstrates the "probability that a significant portion of the general consuming public…, acting reasonably in the circumstances, could be misled to support a claim of misrepresentation and fraud."

## IV. CONCLUSION

For these reasons, Defendant's motion for summary judgment (Doc. 34) is **GRANTED**. By virtue of this ruling, all other pending motions are **DENIED as moot**. The Clerk of the Court is **DIRECTED** to enter judgment for Defendant and against Plaintiff.

**SO ORDERED.**

Dated: September 29, 2023

_____
DAVID W. DUGAN
United States District Judge